Roberts, Mr. Chief Justice, and may it please the Court, the standing trust for antitrust adopted by this Court 30 years ago in AGC is the appropriate test to give effect to Congress's intent under the Lanham Act, and this is for three reasons. First, the plain text of the Lanham Act itself states that the antitrust statute in Section 45 states that the intent of that act is to protect commercial actors against unfair competition. Competition generally is the focus of both antitrust statutes and the Lanham Act. And any test that this Court adopts should be tied to that statutory intent section. Second, the history and the common law of both the antitrust statutes and the Lanham Act are similar. In fact, in the Lanham Act context, the common law was more specific and more direct than it was under the antitrust statutes. And finally, each of the five agents of the Lanham Act provides some causes of action that are beyond the common law. We think the prudential standing considerations that were in place at common law or at least should guide the Court in determining  It would be a lot stronger if you said the Lanham Act merely, as the Sherman Act was supposed to have done, merely adopted the common law. The Lanham Act doesn't merely adopt the common law. It goes well beyond it. I think there are two components to the common law, and we'll talk now about the most general component, and that are considerations of proximate cause and foreseeability that were in place when the Sherman and Clayton Acts were enacted. Those are general propositions that apply to any at least Federal statutory cause of action and would also apply then to the Lanham Act. And the AGC factors address those prudential standing requirements by specifically asking about proximate cause factors. The very first question that AGC asks is, is this the type of injury Congress intended to address? It's a logical question and should be asked appropriately in any Federal statutory cause of action. The second factor is that the Federal statutory cause of action should be addressed by the Federal statutory cause of action. Sotomayor, you're saying that it's illegal to use that person's products. It seems to me that's the essence of the Lanham Act as it's now written. Two points. First, we can talk about the alleged false advertisements in this case. The first alleged false advertisement by Lexmark was to Lexmark's customers saying that you're bound by this single-use restriction on our cartridges. That advertisement does not mention static control at all. The second alleged false advertisement does not mention static control at all, the Respondent. The second alleged misrepresentation were letters written to remanufacturers saying to the remanufacturers, if you remanufacture or remanufacture our cartridges, you will violate our rights, including if you use static control products to do it. Beyond that, though, the question of target is not a test, it's a conclusion. And in AGC, this Court in the antitrust context rejected a test for antitrust standing called the target area test. And Conte Brothers, the Third Circuit decision that first adopted the AGC test in the Lanham Act, also did not adopt a target area test. And so, for that reason, we think the factors that AGC lays out are the appropriate factors to determine antitrust standing in any given case. Alitoso, I assume you would agree that the manufacturer of the cartridges that compete with Lexmark would have standing here. And, in fact, in this case, they did have standing, and one of the remanufacturers asserted a false advertising claim against Lexmark related to the pre-Bate program. Alitoso, it's not a very big step from the manufacturer of the cartridge that competes to the manufacturer of the chip, which is really the essential component of or an essential component of the cartridge that competes. Well, we think it is. And wherever the Court draws the line on standing, whoever is just on the other side of the line is always going to think that it's too narrow. Our cartridges, for instance, they do have microchips on them. We do not sell the microchips. Static Control does not sell cartridges. Those cartridges also have resin. They have labels. They have toner. They come in boxes. If we allow one of many parts suppliers like Statix, the remanufacturing industry, to have standing. Well, then you could sue them for infringing on your patent or whatever intellectual property protection you have. But here is an entrepreneur that says, we make a product, and Lexmark is disparaging our product, it is essentially trying to get us out of this line of business. Certainly, if you just read the words of the Lattimac, this is allegedly false advertising. And the false advertiser shall be liable to any person who believes he or she is likely to be damaged by such an act. That legislation seems to envision a very broad standing, certainly enough to encompass the person whose product is being disparaged. Certainly, the Lattimac uses the any person language, and that language is no different, though, than the any person language that appears in antitrust statutes and in RICO, both instances in which this Court adopted the AGC test to determine standing. The one difference, the one difference is the Lattimac, unlike the antitrust statutes, at section 45 specifically states its intent as to protect commercial actors against unfair competition. Breyer, suppose you have the --"shouldn't a supplier have standing to sue the competitor of the firm to which he supplies, where the alleged libel or slander, whatever it is, is directly about what the supplier supplies?" The example, make it clearer. Suppose that Bailey's sells ice cream sundaes and the defendant has said the chocolate sauce in Bailey's ice cream sundaes is poisonous. Now, the chocolate sauce does not compete with the defendant because he's an ice cream parlor, but nonetheless, he is directly affected by the statement that he's suing about. He's therefore different from other suppliers who might have supplied Bailey's with cushions, heat, electricity. But shouldn't at least that supplier of chocolate sauce have the standing to bring the claim against the ice cream parlor that competes with Bailey? That supplier may very well have standing to bring a State law claim for defamation or anything. Why not, why not, why not in this Lanham Act suit, why shouldn't the chocolate sauce supplier have standing? He's directly victimized by he's not just lost sales, but the comment is about him. We believe to give intent to section 45, which states that the purpose is unfair competition, standing under the Lanham Act is going to be a narrow-focused inquiry. And if you, using the cartridge example as an example, if a supplier of microchips, who is one of many suppliers in the market for microchips, has standing, then couldn't the person who prints the label that sells to remanufacturers by saying, well, if Lex Marcaten had made these statements to you, you would have refilled more cartridges and we could have sold more labels? Well, the answer to your question, if you're asking, is no, because the person who supplies labels is totally, has not, the statement that's sued about has nothing to do with labels. So the people who have nothing to do with the statement wouldn't have standing. My, do you remember my question? Alitono, I do. All right. Well, why shouldn't that person who is talked about in the statement have standing? A clear distinction, not every supplier could sue. We think Lanham Act does and should have a narrow standing requirement. And in the false advertising context, it would be unusual. Conte Brothers pointed out that there might be situations where a noncompetitor has standing, but that it's going to be an unusual situation. Mr. Lloyd, can I ask you what you think the standing doctrine is all about in a context like this? You said before, you said, to give, to affect Congress's intent in passing section 43. Is that what we're trying to do here? I think so. I think under any standing analysis or test, one of the questions ought to be what was Congress's intent. Well, one of the questions. Why isn't that the only question that we ought to be concerned with in a case like this? Congress creates a right of action, and it seems to me that the normal thing that we ought to do and do do in most contexts is just say, you know, what's the scope of that right of action? And certainly we could take into account Congress's purposes in interpreting the scope of that right of action, but that would be the question. That should always be a question. Now, I would point out there are only two tests that have been identified that even ask that question in the Lanham Act, and that's the AGC test that we propose and the categorical test that we propose in the alternative, because it categorically requires direct competition. None of the other tests that have been identified ask that question that it should be asked in every court.  Kagan. Kagan. Kagan. If that's the question, the AGC test strikes me as not the answer to that question. I mean, we don't usually say what was Congress's intent, how broad did Congress mean for this cause of action to go and then sort of devise a five-part test with a lot of things that aren't mentioned in the statute. I think that the — this Court's decision in Holmes, and I believe it was concurrence by Justice Scalia, identified proximate cause factors as part of any standing analysis. And I think that's what AGC was getting at when it adopted factors 2 through 5, is these are proximate cause type injuries, plus, as AGC noted, we want to make them judicially manageable, which is a legitimate prudential standing concern, because one of the prudential background considerations is whether the prohibition on litigating generalized grievances. So a test that looks at those proximate cause factors, which are part of, we think, a standing analysis in any statutory scheme, is appropriate and it ensures that the statute doesn't limit injunctive relief issues to the extent that proximate cause always limits a recovery on damages. It doesn't limit injunctive relief issues, and so the question is, why should we be reading into a statute a limitation against bringing any action based on your proximate cause point when there are other remedies in this statute? And just as there are injunctive remedy available in the antitrust statute and in this Court's decision in Cargill, I think in a footnote the Court noted that if all you have is an injunctive request under antitrust statutes, some of those factors may not be relevant. For instance, duplicative damages, risk of apportionment issues would not, Your Honor's correct, be relevant. Scalia. But proximate cause? What about proximate cause? I mean, do you agree that there's no proximate cause analysis when what is at issue is an injunction? No. What we were saying is some of the factors that AGC identifies such as that. Answer my question. Yes or no? Do you agree with what Justice Sotomayor said? I think it is likely still appropriate in an injunctive analysis to look at the proximity of the plaintiff and the defendant. I think that is a legitimate inquiry. I think some of the damage factors for AGC are not going to be applicable in the injunctive analysis, and that's what we do in antitrust. Explain to me why, we're talking in abstract terms. Here is a manufacturer says, my product is being disparaged by the defendant. My product, not someone else's. The result is that I am losing business. Why do we need anything more than that under the Lanham Act, which makes false advertising? It gives a claim for false advertising to somebody who has been hurt by it. Again, there very well could be State law remedies available to plaintiffs who do not have standing under the Lanham Act. But I'm not asking about State law remedies. I'm looking at this statute, and your interpretation seems to stray very far from what the statute, this section of the statute says. I mean, if you just read this section, would you agree that, what is the party? SCC is someone who has been injured, damaged by the false advertising? We agree they make that Article III allegation. But in the Lanham Act, where we think it's the one thing that is clear under the Lanham Act is there is prudential standing considerations, and Congress has not expressly negated those. So the question is, what test to apply? We think the Lanham Act is a limited, focused statutory remedy. It's not a Federal tort of misrepresentation. It's not a Federal tort of deceit. The purpose of the statute expressly is to protect commercial actors against unfair competition, not against unfair trade practices. And so to use the or take advantage of the Federal courts in the Lanham Act, which has potential for treble damages and attorneys' fees, we think it's a narrow class of plaintiffs. Particularly, unlike the antitrust context, there is no intent requirement under the Lanham Act. One could be liable for damages under the Lanham Act for an innocent misrepresentation, one that they thought at the time was truthful, which would argue perhaps for more limited standing than either the antitrust statutes, because there is an intent element under the antitrust statutes. And so that standing should be more limited in this situation. Again, it's a narrow, focused statutory remedy. And unlike RICO, unlike Sherman, unlike Clayton, there is an intent section which we think guides the courts or should guide the courts on which test to adopt. And again, the only two tests. Ginsburg. Is there any question here that there was an intent on the part of Lexmark to stop the static control company from making these microchips? Well, again, on the alleged facts of this case, statutes. We have to deal with the complaint and have to assume that that's true. What the complaint alleges is that Static was making a product and Lexmark was disparaging it, not by happenstance, but quite deliberately. We would disagree with that characterization of their counterclaim. Again, the advertisements here were directed to the remanufacturers who are indirect competitors of Lexmark and was going to. And the directive, the letter said don't buy Static Control's product, because if you do, you are in jeopardy of being a contributory infringer. What it first says to the remanufacturers is that if you remanufacture our pre-baked cartridges generally, you infringe our rights, but you will also infringe those rights if you use Static Control's products to do it. But merely because one is a target, we do not believe then necessarily translates into standing. It did not translate into standing in the AGC case. The union was the target, and this Court nevertheless denied standing. The Fifth Circuit decision, the Procter & Gamble decision, which involved Procter & Gamble and Amway, there the parties were actually competitors, and because of the nature of the statements that Procter & Gamble allegedly made about compensation to Amway's distributors and how they get distributors, there they were actually direct competitors, and standing was not provided, which, again, we think just reinforces that this is a narrow statutory remedy. The couple points about the zone of interest test, which was advocated by Static in their brief, that is certainly a general prudential background consideration we think would be helpful. But here it merely asks the question. We think AGC provides the answer to that question. And the zone of interest has been largely used in the APA context, and it's appropriate in that context. There's a two-step inquiry under the APA. First, the APA itself is a procedural act, but then you have to go to the underlying substantive statute to determine who a party has agreed, what party has agreed. The zone of interest, therefore, has to administer hundreds, if not thousands, of very different Federal substantive statutes. And so some flexibility needs to be inherent in that test. If such a test were employed, we think in the Lanham Act, we could lead to over-enforcement, which has its own set of harms. We don't think you want to deter companies from putting even truthful information into the marketplace for fear of facing lawsuits by remote parts suppliers. And so in this instance, we think the AGC test itself provides the answer to the question of what is in the zone of interest. Sotomayor, what's wrong with the test adopted by three circuits, the reasonable interest test? We think it suffers from, in this instance, because here we have the Lanham Act and we can tailor a standing test to the Lanham Act. Reasonable interest suffers, we think, from the same flaws in this context as would the zone of interest test. It's no more than Article III standing. Anybody that can plead a reasonable interest in the subject matter of the advertisement and a reasonable basis for believing that interest is harmed, that's no more than Article III standing requirement. And we do in this case believe, have universal recognition, that there should be prudential standing requirements in the Lanham Act. And it provides little guidance to courts below and, therefore, could lead to inconsistent results. Kagan. Mr. Roy, you said there's universal recognition that there should be prudential standing requirements in the Lanham Act. When should there be prudential standing requirements in a statutory right of action? In other words, Congress passes lots of statutory rights of action. And let's say that almost never, never does Congress talk about prudential standing one way or the other. Do you think that every time Congress passes a right of action, the courts are supposed to engage in a kind of free-form inquiry about what kind of prudential standing rule should apply to that particular right of action? We think in any Federal statutory cause of action, prudential standing requirements are presumed. Given section 45 here, we believe that the Lanham Act clearly does have prudential standing requirements. This Court in Bennett, in looking at the Endangered Species Act, at least the standalone citizen suit portion of it, I believe determined that Congress eschewed prudential standing requirements there because the subject matter of the Act was the environment, something that I think the Court noted everybody has an interest in and want to encourage private attorney generals to pursue those causes of action. And in that situation, there was a right of first refusal for the government to first bring the lawsuit before a private suit could be brought. So there are times when prudential standing requirements have been done away with by Congress. And you just sort of know them when you see them, or it's a reaction to what are perceived to be very broad statutes, or, you know, when do we know that we should be off on a prudential standing jag? I think that the first place you look is at the text of the statute itself. To the extent that there are situations where legislative history might speak to intent, and I think Clark says let's look at that, in this situation, the 1946 Act in the Senate report that accompanied it said this is the purpose to — this is the end to which this statute was directed, and it identified fair competition and the prevention of diversion of goodwill from one to the other. Well, maybe the answer is when we just can't believe that Congress really meant the literal words of the statute to be interpreted without some limiting principle. So here Congress says any person, and any person surely includes people who purchase printer cartridges. So if we don't think that Congress really meant for every single person who purchases a printer cartridge to be able to file a claim in Federal court with no amounting controversy requirement, then that would be a situation where some consideration of prudential standing would have to take place. That's correct. Any person language here would allow consumer standing, which is one thing that every circuit that's addressed this issue has agreed upon, that there is no consumer standing under the Lanham Act. Again, that's tied to section 45, which protects commercial actors. But there, couldn't that be done just by interpreting the language of the statute in accord with its purposes, because you have a specific purpose provision in the Lanham Act that says we're trying to get at commercial competition here? I think standing is, in many, if not most, instances, a separate analysis from the cause of action itself. And the text is always going to provide a cause of action. Scalia, what is prudential standing? I don't really understand. Is it anything other? Should it be renamed statutory standing? It can always be done away with by Congress, right? It can, and. And is it the kind of standing that we would have to raise on our own? Is it jurisdictional, so that if a party hasn't raised it below, it nonetheless is still an available argument on appeal? Is prudential standing of that sort? At least I normally don't think of it in terms of jurisdictional. I think Article III injury, in fact, would be in the nature of a jurisdictional analysis. I think prudential standing is a little bit different. That phrase only came into use, I think, in the 70s, but the concepts underlying that have been used. Scalia, I'm uncomfortable with the notion that, you know, in my prudence, I give standing here and I deny standing there. It's just up to me. I can understand Article III, but unless prudential standing means statutory standing, so that I look to the statute to see whom it was intended to empower to bring lawsuits, I'm very uncomfortable. I'm not comfortable with the whole notion. And I think the phrase statutory standing would be fine with us. And again, the very first AGC question that asked that question, what did Congress intend to address here? If there are no further questions, I would like to reserve my time. Thank you, counsel. Mr. Jones. Mr. Chief Justice, and may it please the Court, as some of this questioning indicated, if any party has standing under Section 43A of the Lanham Act, it's a party whose goods are misrepresented in false advertising, to remove any doubt about that question, Congress amended the statute in 1988 to ensure a cause of action when a false advertiser misrepresents the goods or commercial services of, quote, another person, end quote. This Court's zone of interest analysis shows that parties whose goods are disparaged, either expressly or by necessary implication, must have standing to sue. Lexmark's simply wrong about the idea that the zone of interest analysis in the Lanham Act does not pose limits upon who may sue. As the hypothetical with respect to the Bailey's Ice Cream Parlor shows, you can look to the subject matter of the false advertisement to see whose goodwill and commercial activities are related to the falsity of the statement, and those who come within the falsity in the subject matter of the advertisement at issue should have standing, while those who may have tangential injuries would not. So that's not the case. Scalia. How do you square that with the statutory provision that the purpose of the law is to prevent unfair competition? Unfair competition, not unfair trade practices, unfair competition. Where Section 45 says that it's designed to protect those engaged in such commerce from unfair competition, it's referring to what is defined in the operative text as unfair trade practices. Unfair competition involves specific measures, use of falsities, that can injure parties who are not necessarily in competition with one another. The courts as a whole all agree that a competition requirement cannot be inferred into the false association cause of action that is also unfair competition that's part of Section 43A. Section 43A goes to commercial activity. There's unfair competition in the sense that all of the activity under it is commercial and competitive in that sense, but some narrow form of competition between a plaintiff and a defendant for the purposes of standing is inconsistent with the structure of Section 43A and the text of the authorizing. Suppose the comments in this case only disparaged the cartridges themselves and not the chips. Then would the chip manufacturer, would your client have standing? Yes. If the statements are about the legality of remanufacturing Lexmark's printer cartridges, all of those statements are about Static Control's products and the legality of using them, the places where those can be lawfully used. Static Control here makes microchips and parts that are specifically designed for the very commercial activity that this false advertising says is illegal. In that sense, Static Control's goodwill and commercial relationships are all very closely and by necessary implication talked about in the advertising. Alito, that may be true, but I don't understand how you get from the zone of interest to the limiting principle that you are suggesting, which is that the zone of interest includes only those businesses, other than the direct competitor, whose products are targeted by the false statements. As Mr. Lloyd recognized in the legislative history of the Act and in this Court's opinion in Daystar, the Court has said that the core principle of the Lanham Act as a whole is to protect commercial actors' goodwill and reputation. And that can be seen in the trademark provisions. It can be seen in section 43A itself. And I think that basic principle means that there's a tie to the subject matter of the false statements, the false association. And that can apply to both prongs of section 43A to where there's a nexus between the subject matter of what's talked about and the person who's injured. Scalia. Did you answer his question? I'm still left with a lack of understanding of how the disparagement of the component deposit product is automatically a disparagement of your chip. The disparagement, the statements about the uses to which static controls products may be put are all implicit in all of the false advertisements that are at issue in this case. When Lexmark says that remanufacturing our cartridges is illegal, even if it doesn't mention static control in one particular advertisement, all of that goes to the subject matter of whether or not those products have lawful uses. These are specifically designed for this very commercial activity. All right, but to change it, suppose the statements don't implicitly, even implicitly, target static control, but the effect of the statements is to drive static control out of business. You would say there would be no standing there. It depends upon the context of the case. In many circumstances where the false advertising is not about a product, those products will have multiple different uses, such as commodity products that are supplied, gears and springs, for example, that may have many different uses, the false statements here would not be about those products, and those manufacturers can sell their gears to many other different uses that require gears. Static controls microchips here only work for remanufacturing Lexmark printer cartridges. All right. So in Justice Breyer's hypothetical about the soda fountain that sells ice cream with chocolate sauce, and there's a statement that the chocolate sauce is poisonous, if the effect of that is to drive out of business a little company that manufactures ice cream that's used there, that company would not have standing. I think if it's not being talked about in that case, that company probably would not have standing. That's – but the fact that the false advertisements in that case were about the chocolate sauce shows why the chocolate maker needs to have standing. That maker has different incentives vis-a-vis the person who's operating the Bailey's ice cream store. Bailey's ice cream store could decide the game's not worth the candle and we're going to stop buying this chocolate even if all of those advertisements are false. And so the different incentives for the key supplier and the person who's actually within direct competition means that to further the purposes of the Lanham Act, a party whose goods are misrepresented, either expressly or by necessary implication, needs to have standing. Alito If Bailey's was the only place that sold this chocolate sauce, Bailey's might have standing. Yes. It would be similar to this case. But if other places also sold this chocolate sauce, then Bailey's is out. In the hypothetical that I heard from Justice Breyer, the statement was the chocolate sauce that Bailey uses is poisonous. In that circumstance where both Bailey's is mentioned and the chocolate sauce, then I think Bailey's would have to have standing. Breyer How do we tie that in? I'm sort of sorry I used that hypothetical, because it truly illustrates the point. It illustrates the point. I mean, in my own mind, the standing question is designed to answer, are you the kind of plaintiff that Congress intended in this statute to protect against the kind of injury that you say you suffered? Now, that goes back to Justice Brandeis, and it goes back to saying, did you suffer a common law injury or do you fall within the scope as defined? Normally, Congress doesn't think about that. And so courts decide, and we're right in the middle of that decision. So if I think that basically you have a point that at least the supplier who is mentioned in the defamatory statement by the competitor who bought the supplies, at least where he's mentioned explicitly, there should be standing, which means your side would win, I guess, what do I write to tie that in to the three separate kinds of tests that the circuits have talked about? That's what I can't quite see, because they talk about the reasonable interest test, they talk about the zone of interest test, they talk about some other kind of test. How do I tie this into that? Burschel, Justice Breyer, we think respectfully that the circuits' tests don't necessarily encompass this situation as well as they could, which is why we suggest that it's best for the Court to step back to first principles of prudential standing, which is the zone of interest analysis. Has that been applied outside the context of the APA, that is, when the suit is against an agency? Yes, Justice Ginsburg. Has it been applied to private party litigation? Yes, Justice Ginsburg. In 2011, this Court's opinion in Thompson v. North American Stainless applied the zone of interest test to a private dispute under Title VII as to whether or not a party in that suit had a private cause of action when he was the spouse of the person who was the spouse who was against. Breyer, if that's so, if you go back and you just lift the APA test, because I think Justice Ginsburg is absolutely right that this is not an APA suit, the word arguably was inserted in the normal standing test by ADAPSO, which Justice Douglas wrote. Now, if we take that and simply lift it, the first thing that a person who would get a new lawsuit, I guess, is a consumer, because the consumer could easily say, I didn't buy this product because of the false statement that the competitor of the person I would have brought from made. And indeed, you could have very big consumers and they could allege all kinds of injuries. And so if I simply lift the test, I'd rather worry that I'm changing the law quite radically. I don't think so, Justice Breyer, because the zone of interest test requires the Court to determine what the purposes behind the statute are. But arguably, isn't it arguably in part to protect consumers? In the Lanham Act, I think the purposes of the act are to protect those engaged in such commerce from unfair competition, from false statements. And once that is defined, and you look at the history of it, and it seems fairly clear from the history that it's designed to protect commercial actors, once that is defined, those parties who are arguably within that zone, who arguably assert those interests, should have standing. And that arguably term places the proper thumb on the scales with respect to what is otherwise clear statutory text that's being interpreted here, that generally it respects the role of the judiciary vis-a-vis the legislature when Congress does not. Sotomayor What do you see as a difference between reasonable interest and zone of interest? What do you – I haven't quite understood what the difference is between the two. Justice Sotomayor, I believe the zone of interest test can have some more teeth perhaps than the reasonable interest test, because it tailors what is the interest protected to the text and history of the particular statute. The reasonable interest test, if properly applied with all of that in mind, would, I think, be applied in similar ways. But the zone of interest test has the directive to courts at each time, rather than thinking what's reasonable in the abstract, to think about what Congress intended to protect as part of any given statute. Alito Suppose that Lexmark had not made disparaging comments about static control, but had simply made false statements about its own product. Suppose it said that if you use our product, our cartridges, they will emit some sort of vapor in your house that will promote good health. Now, who would be within the zone of interest there? So you would look at the subject matter of that false advertisement, and as you've expressed it, I don't believe that static control's products would be within the subject matter about the vapor of Lexmark's printer cartridges. But if, for example, Lexmark were to say our printer cartridges produce A-quality print jobs, and it's implicitly talking about its toner, static control as a manufacturer of toner may have standing in that circumstance, because by comparison, by necessary understanding about how the reputations of the party's products are at play, static control might have standing in that instance. Alito So who would be within the zone of interest? Only would other printer cartridge manufacturers be within the zone of interest in that situation? In that situation, I think remanufacturers would, and the supplier of toners that is necessarily by comparison talked about in that false advertisement. And when a party only talks about their own goods, there are necessarily going to be very difficult cases on the margins as to where the ripples of the subject matter of that false advertisement extend. That's certainly not this case where Lexmark falsely advertised that the company was a manufacturer of toners. Scalia I understand, but why should it be arguably, arguably? I mean, under the APA, you're dealing with suits against the government, and it's just funny money at issue. But when you have private suits, you can drag somebody into court simply because you are arguably within the zone of interest protected? I'm not happy with that. Jay If the Court wanted to get rid of the arguably language for the purpose of the Lanham Act, we don't feel we have a dog in that fight. But I do believe that Kagan Well, Mr. Jones, is the question that you are asking us to ask just, did Congress want this kind of actor to be able to sue, is that the question that you think we ought to be asking? Jay Yes. If there are going to be prudential limits on what a statute would be. Kagan Let's not call the limits anything in particular. The question, in your view, is Congress passes this Act, did Congress, including this right of action, did Congress want this kind of actor to be able to use that right of action? Is that correct? Jay Yes. And in the 1988 amendments that expanded the cause of action to ensure a right of action when a false advertiser misstates another person's goods, that amendment should be dispositive in this case. Kagan But if that's correct, I mean, rather than talking about whether something is arguably within the zone of interests in the way we have to do in the APA context, because we are dealing with a lot of statutes that don't provide rights of action there, why shouldn't we just ask what kinds of actors did the Lanham Act provide a right of action to as sensibly construed? We should sensibly construe the Lanham Act in accordance with Congress's purposes. Jay I think that would be a very straightforward way to deal with this case, Justice Kagan. I think the zone of interest Kagan And then what would be the test? What would we say the Lanham Act means? Jay The Lanham Act means that those parties whose goodwill and commercial reputation is necessarily affected by the falsity of the statement have standing to sue, are able to stop such false advertisements, and are able to seek recompense for the damages that are suffered. And at the heart of that are those parties whose goodwill and whose commercial services are expressly misrepresented or implicitly misrepresented by a particular false advertisement, because they have a unique interest in vindicating their reputations and making the false advertisements stop. Ginsburg So what makes this limit a prudential limit? As opposed to the notion of a prudential limit is Article III standing, but even so you can't sue because you don't meet the prudential. Jay Justice Ginsburg, this Court has talked about these types of inquiries as prudential limits on standing. I think it's perhaps better understood as interpreting what does any person really mean under this statute. But whether it's thought of as prudential standing or whether static control falls within any person or has injuries as meant by the statute, the inquiry is ultimately the same. What is the intent of Congress? What was their core purpose in this Act, and who did they intend to sue? And in the text, here there is very, very broad authorizing language that gives a right of action to any party who believes he or she is or is likely damaged by such false advertisement. Sotomayor Could you tell me how that would affect a situation that I read about in the papers where a company like, and not to suggest that they have, but only using this as a hypothetical example, McDonald's says in its advertising, we, in fact, our calorie count is less than 200, so buy from us. Consumers, under your theory, can't sue under the Lanham Act. Assume that's absolutely true, false. Who would be – who would have a permissible ground to sue in that situation? I think in that situation you would look to Burger King would have a cause of action, probably even Subway, because they're a fast food company that advertises itself as based upon lower calorie options, would have a standing to sue in that  Sotomayor All right. So fit in that into your definition of what standing is. How do we not get it to be the local, or maybe you say it's okay, the local restaurant that has no franchises, that does healthy meals, which is actually true of many restaurants today, particularly in Washington? Sure. So in each of those contexts, Subway and Burger King can say that their goodwill, their relative standing in the marketplace has been necessarily affected by McDonald's' false advertisements on those subjects. And if you get to looking at pleadings, courts would look to whether or not the allegations that set that forth are plausible and meet that standard, and how far out that's going to go is for another day. But I do believe it would be permissible for courts to say that you do need to allege that sort of harm to goodwill or comparative standing in the marketplace for the standing to exist under the Act. Lexmark's request that the Court import into the Lanham Act rules from the antitrust context should not be countenanced. The antitrust laws incorporated the common law itself, as this Court said in Ligon, in a way that when Congress prescribed a very broad set of actions that could not mean what it said, Congress necessarily anticipated that there would be some judicial policymaking and common law rulemaking as to the scope of a cause of action and who can sue under it. Breyer. Now, does that, just thinking of Justice Sotomayor's hypothetical, that suggests that maybe the reasonable interest test is okay, because what that's trying to do is you have McDonald's that's allegedly made the false statement, and then there are a range of people in terms more or less distant in respect to being direct competitors. There is what you said, Burger King, direct competitor. Then there are the health restaurants. Then there are so you need something to cut off at some point the plaintiff who claims to be a direct competitor, but really he's not going to lose much money and he's quite distant. A health restaurant in a foreign city, I mean, you know, you see. And the reasonable interest test, I think, is trying both to get at that and also to figure out what kind of supplier you are. Are you one who falls within the scope of the false statement or are you not? You don't want the electricity company to be able to sue. So what do you think about using the reasonable interest test, but explaining it in something like the terms I've just stated? If the Court were to adopt the reasonable interest test and explain it in those terms, I think we would be happy with that result. I think that it looks, it's perhaps a little bit better to think about what is a reasonable interest with respect to the proximity to the falsity of the statement, to the subject matter of what was at issue, because you're dealing with, it's not a reasonable interest test. Scalia, It isn't whether the interest is reasonable, it's whether it was the type of interest that the statute sought to protect. And the term zone of interest is a better expression of that concept, it seems to me, than reasonable interest. I mean, that's my objection to the reasonable interest test. And that is precisely why in our brief we do believe that it would be better for the Court to step back to that level and talk about the interest in protecting goodwill and commercial actors standing in the marketplace vis-a-vis the subject matter of the falsity. That would be better. That would be a fact. Ginsburg, Your zone of interest, in response to Justice Scalia, would establish us another tier of zone of interest, that arguably within the zone is the APA standard. And you said here you could strike arguably and just have it within the zone. The Court said in Benefi's Spear that how the zone of interest will apply will depend upon the text and history of a statute, and it will vary somewhat based upon statutory text and context. And if for different types of statutes, the Court could look to what Congress meant to protect as that. And I believe that once those interests are defined, the arguably language does mean that in a close case, parties should have standing, because that's generally what the courts do when they're interpreting otherwise clear statutory text. I think the deference should be to the words that Congress passed in a close case. Scalia, The arguably could refer to factual matters. That is, you are within the zone of interest if certain facts are established. And if you don't establish those facts, you're not. That's how I've always understood the arguably. I don't think it means, you know, close enough for government work. It doesn't mean that. It means you are within the zone of interest if, indeed, these facts that you've asserted exist. And that understanding of the word, Justice Scalia, would fit with this Court's pleading rules and whether or not somebody has plausibly pled that certain facts that would show that the test is met. And I think that would make sense in this context. But what about, Mr. Jones, in just a couple of years ago, we made clear that arguably was to be taken very seriously and essentially established a kind of buffer zone so that it, you know, if you kind of we weren't going to be too strict about it. And the reason we did that, again, is because the way the APA works is it's on top of a lot of Federal statutes that have no rights of action themselves. So there is nothing for us to interpret in those Federal statutes. And we say, well, if you arguably come within the scope of that statute, then you are aggrieved for purposes of the APA. But this is a very different situation. This is a situation where we have a particular right of action. And rather than create any kind of buffer zone around it, we should just ask how is it sensible to interpret that right of action? Jones, I think that's a good point, and I think it's a good point to make. Two responses to that, Justice Kagan. I do believe that may be one way to look at how you're looking at prudential standing in this Court's doctrines. In certain contexts where Congress has abrogated limits on suit that courts had erected at the common law to say that a certain cause of action is not going to be available to a particular plaintiff, I do believe courts need to be careful in applying prudential rules to avoid resurrecting those same policy concerns that had led courts to say that no cause of action existed in the first place. And so I think, at least in this context where you have a brand-new cause of action that did not exist at the common law, that arguably language may be more appropriate than with respect to a different statute where there are different issues at stake. Am I correct to think that your rule is that the only people who have standing under the Lanham Act are competitors and people whose products are disparaged? And if that is true, then are you not arguably advocating the most restrictive test for Lanham Act standing other than the categorical rule? Competition and competitors will line up in a lot of ways with those who are affected by the subject matter of the suit. I don't know whether it makes sense. I don't believe it makes sense to get at the rule as competition plus those who are talked about as opposed to looking to who is affected by the falsity of the statement in their commercial goodwill. Breyer, if it's who is affected, who specifically are we leaving out? Look, you put in, I don't want to leave out, you've read all the cases. I haven't read them all. But I see that you would put in, we put in the direct competitors, they fall within it. We put in certain suppliers, those who are disparaged. We don't want the electricity company to be able to sue, according to you, and the cases. And I guess we have the mirror case, which we put in would be certain buyers like retailers or wholesalers, and probably applying the same rule about their being mentioned in the false advertising or in the statement. Who have we left out? Who has been given standing in some of these cases that is left out of the description I just gave? I'm not sure I know of any that have been left out that should not have been left out. Breyer, who do you, well, who has not been left out who should have been left out? I mean, I'm trying to see, am I forgetting someone that your reading of the cases suggests has been given standing? So one example that may clarify this with Justice Alito's question about competition is the Procter & Gamble case that Mr. Loy talked about. That was a false advertisement that Amway made about the lucrativeness of being an employee of Amway. Procter & Gamble is a direct competitor, but should not have standing to sue for those false statements because it's not related to Amway's statements about how much they pay to their employees. The subject matter doesn't go to that competitor and that competitor's product. And so I think it's better to look at it in terms of where the falsity of the statement is and how close or far a particular plaintiff is to that statement rather than trying to get at it through competition. Does that help, Justice Breyer? Am I correct that no circuit has adopted the zone of interest test in the context of the Lanham Act? No circuit has adopted it as the test for the Lanham Act. There are cases that talk about zone of interest policies, and there are cases that talk about the interests of protecting goodwill and the reputation of companies who are involved in interstate commerce. But the other tests that courts have layered onto it, I think, don't necessarily get at the direct question that is really at issue, which is did Congress really intend for these injuries to be the subject of a cause of action. So what's wrong with the, what is it, AGC, or what the antitrust standard is? So it's got five things. And Justice Alito just suggested that maybe that's more generous to finding standing than the reasonable interest. The experience, Justice Ginsburg, the experience of the courts would show that applying AGC actually would be more restrictive, I believe, than a zone of interest analysis. The two of the factors from the AGC test are facially inconsistent with the Lanham Act. The concerns about the speculativeness of damages, at least as it relates to quantum, and the concern about the complexity of apportionment and duplicative damages cannot be applied here in a statute where Congress explicitly abrogated limits on suit related to certainty of damages. Section 43A, when it talks about a cause of action to somebody who is likely injured, that shows that those concerns about damages should not be applied. Similarly, the flexibility and the remedy that can be recovered under the Lanham Act in terms of disgorgement remedies, injunctive relief, and a party's own lost profits shows that concerns about those factors shouldn't be applied either. Roberts. Thank you, counsel. Three minutes, Mr. Loy. I have three short points. The straightforward question for this Court is what test to apply for Lanham Act. And we believe AGC is that test. On the facts of this case, we believe that the district court in analyzing these facts got it correct when it found that static did not have standing under that test and when it found that static was not a target, like the Sixth Circuit actually found that static was not a target. Second point, through the entire briefing and now oral argument, I still have not heard, we have not heard how static control is conceptually any different than the union-wise in AGC. And that just goes to show that target is not always the inquiry. Third point, if this Court were to adopt this. Ginsburg. I'm sorry, you used target twice. Once you said SEC was not a target, and the other time you said it was, but target isn't the test. I'm sorry. What I intended to say, and if I misspoke, I apologize, the district court found that SEC lacked standing. The district court found that SEC was not a target. Although the Sixth Circuit decided that a different test should be used, the Sixth Circuit also found that static control was not a target. My final point is if this Court, I'm sorry. Ginsburg. Explain that, because if the, if you accept the allegation of the complaint is true, the allegation is that static product was disparaged, that we manufacturers were told, don't use this product, because if you do, you're going to be involved in infringement. The static control's counterclaim never alleges target, and it alleges, in fact, that the remanufacturers were the ones whose activities we were trying to, to direct. If this Court were to adopt the zone of interest test, it would be the first time this Court has adopted that test outside the APA or APA-like context. Ginsburg. Was Title VII an APA? When I asked Mr. Jones? It, Title, no, it was not an APA, but the language for standing that the Court analyzed is party agreed. The Court then looked at the similarity of that language to the language in the APA and thereby justified using that test in that case with similar statutory language. I think opposing counsel said that they, under their zone of interest test, any person whose products or services are expressly or implicitly implicated should have standing under the Lanham Act. We think that goes too far. If there are no further questions. Thank you, counsel. The case is submitted.